IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KARLUK M. MAYWEATHERS,

     Plaintiff,                       No. 2:09-cv-3284 LKK KJN P

    vs.

GARY SWARTHOUT, et al.,

     Defendants.              FINDINGS AND RECOMMENDATIONS

                             /

I. <u>Introduction</u>

        Plaintiff Karluk Mayweathers is a state prisoner, incarcerated at California State Prison-Solano ("CSP-Solano"), who proceeds without counsel and in forma pauperis in this civil rights action. Presently pending for decision by this court is defendants' motion for summary judgment. (Dkt. No. 30.)

        This action proceeds on plaintiff's Amended Complaint ("AC" or "complaint") filed December 22, 2009 (Dkt. No. 8), against the following defendants: CSP-Solano Warden Gary Swarthout, CSP-Solano Muslim Chaplain Abdul Nasir, and CSP-Solano Jewish Chaplain Leah Sudran. Plaintiff, a Muslim, alleges that defendants improperly denied his request for a Halal diet or to be provided a Kosher diet pending implementation of the Halal diet program. Plaintiff alleges in the operative complaint (referring to himself in the third person) that, "as an

1

orthodox Muslim, of the SHAFI school of thought . . . [plaintiff] <u>must</u> consume ritually-slaughtered meat to feel complete in his spirituality, as clear commandments guide him in this subject and he has suffered bodily harm in the past for adopting the prison 'vegetarian option.'" (Dkt. No. 8 at 3 (original emphasis).)  Based on the initial screening of the complaint pursuant to 28 U.S.C. § 1915A, this court found that it appeared to state potentially cognizable claims pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-1, et seq. (thus also implicating plaintiff's First Amendment right to freely exercise his religion), and plaintiff's right to equal protection under the Fourteenth Amendment. (Dkt. No. 12 at 2-3.)  Plaintiff seeks the following relief (Dkt. No. 8 at 3) (original emphasis):

> (1)  Provide KOSHER meals to Plaintiff until prison is able to provide Halal meats, imme[]diately and without fail;
>
> (2)  Declaratory relief, in that the CDCR violated RLUIPA 2000 by depriving Plaintiff of Halal meats or KOSHER meals in the interim;
>
> (3)  Declaratory relief in that the CDCR violated the Equal Protection Clause of the U.S. Constitution in <u>intentionally</u> denying Plaintiff Halal meats or the alternative of KOSHER meals in the interim;
>
> (4)  Costs of this lawsuit, $5,000 Punitive and $5,000 Compensatory Damages for the willful deprivation of RLUIPA 2000 and 14th Amendment.

Defendants move for summary judgment or, alternatively, summary adjudication of claims.  (Dkt. No. 30.)  Plaintiff filed an opposition (Dkt. No. 31); defendants filed a reply (Dkt. No. 32); plaintiff filed a response (Dkt. No. 33).[1]

For the reasons set forth below, this court recommends that defendants' motion for summary judgment be denied.

////

---

[1] However, plaintiff is admonished that the court's Local Rules do not provide for such a "response", also known as a surreply.  Local Rule 230(*l*) contemplates only the filing of a motion, opposition, and reply.  The court did not request the filing of a surreply, thus, plaintiff's "response" will be disregarded.

II.  Legal Standards for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56(c) is met.  "The judgment sought should be rendered if . . . there is no genuine issue as to any material fact, and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the

1  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party
2  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
3  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
4  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n , 809 F.2d 626, 630 (9th Cir.
5  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
6  return a verdict for the nonmoving party, see Anderson, 477 U.S. at 248; T.W. Elec. Serv., 809
7  F.2d at 631.

8  In the endeavor to establish the existence of a factual dispute, the opposing party
9  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
10 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
11 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary
12 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
13 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) Advisory
14 Committee's note on 1963 amendments).

15 In resolving the summary judgment motion, the court examines the pleadings,
16 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
17 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
18 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
19 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
20 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
21 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
22 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
23 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
24 show that there is some metaphysical doubt as to the material facts . . . Where the record taken
25 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
26 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

On March 12, 2010, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 16.) See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III. Undisputed Facts

The following facts are either undisputed by the parties or, following the court's review of the evidence, have been deemed undisputed.[2]

1. Plaintiff is a prisoner within the custody of the California Department of Corrections and Rehabilitation ("CDCR"), presently incarcerated at CSP-Solano.

2. When plaintiff entered the custody of CDCR in 1986, he was a practitioner of the Bahai religion, a Christian faith.

3. Plaintiff was introduced to the Islamic faith in 1988.

4. Plaintiff converted to the Islamic faith, consistent with his present beliefs, in 1995.

5. Beginning in 1995, plaintiff utilized the Religious Vegetarian Diet option made available by CDCR, because the food offered in that diet did not contain any food prohibited by plaintiff's Islamic religious beliefs.

6. After plaintiff's transfer to CSP-Solano (date not provided), he sought to be provided with Halal meat. In the meantime, plaintiff had his choice of routine meals or vegetarian meals; he would trade food with other inmates to reduce his intake of starches, and would eat fish (a nonprohibited food) when provided, but otherwise was limited to beans, peanut

---

[2] Most of these statements are taken from defendants' statement of undisputed facts, drawn entirely from plaintiff's November 2, 2010 deposition. (Dkt. No. 30 at 2-4; Exh. A.) Plaintiff did not file his own statement of undisputed or disputed facts, although he did file a sworn affidavit in opposition to the motion for summary judgment. (Dkt. No. 31 at 3-9.) The court has relied on plaintiff's affidavit to the extent that it is clearly based on plaintiff's personal knowledge. See Bliesner v. The Communication Workers of America, 464 F.3d 910, 915 (9th Cir. 2006) (affidavits offered in support of, or opposition to, summary judgment motion must be based on personal knowledge).

butter, eggs and cheese, as protein sources.

7. On August 17, 2009, plaintiff completed a "Religious Diet Request" (CDCR Forms 3030 and 3030A), seeking the "Halal Meat Alternate" diet option, which indicated that "[a] halal meat alternate will be provided at the dinner meal when meat or poultry is served." (Dkt. No. 8 at 14.) Plaintiff provided the following explanation in support of his request (id.):

> I am mandated to strive to obtain HALAL meats, when available, however I am allowed to consume KOSHER meats and parve consumables if no HALAL food is available. . . . Unlike the unorthodox "muslims," I am expressly forbidden from practicing veg[e]tarianism or to appear to follow such practices; Orthodox Muslims eat meat and the Islamic Jurisprudence supports that edict. I may consume KOSHER foods but never restrict myself from eating meats as long as those meats are lawful. I am personally required to consume Kosher or Halal meats to maintain my health & spirituality: A Holistic Solution.

8. Plaintiff submitted his request to Jewish Chaplain Sudran because he believed that Muslim Chaplain Nasir was on vacation at the time. Chaplain Sudran did not act upon plaintiff's request.

9. On August 21, 2009, plaintiff filed an administrative grievance (Log No. 09-01803), requesting that "he be place[d] on the Halal diet, and in the interim be provided the Kosher diet, as soon as possible."[3] (Dkt. No. 8 at 10.) Plaintiff was interviewed by Muslim Chaplain Nasir on September 11, 2009, who verbally denied plaintiff's diet request on the ground that the Halal diet option had not yet been implemented at CSP-Solano, and was therefore not available. Plaintiff's grievance was formally denied on September 15, 2009, based on the following rationale (id.):

> The result of the inquiry revealed that CSP-Solano is in accordance with DOM [Department Operations Manual] section 54080.14 [setting forth the requirements of the Institution Religious Diet Program]. The kosher diet is limited to only Jewish inmates desiring to practice Jewish Kosher Law. Based on these

---

[3] This construction of plaintiff's request is set forth by CSP-Solano Deputy Warden Dawn Lorey, in her First Level Review; a copy of the original grievance has not been submitted.

> guidelines, Muslim inmates do not meet the parameters for being approved for a kosher diet. Muslim inmates may apply for and receive a vegetarian option in place of regular meals.

10. Plaintiff appealed the denial of his administrative grievance to the second level of review. On November 2, 2009, Warden Swarthout partially granted the appeal, insofar as the Muslim Chaplain had acted on plaintiff's request, although he denied it. The Warden denied plaintiff's appeal insofar as plaintiff sought to obtain a Halal diet "as soon as possible," because the diet was not yet available at CSP-Solano. The Warden noted that CDCR sought to implement the Halal diet option in May 2010, at which time plaintiff could request participation. Finally, relying on California Code of Regulations, Title 15, Section 3054.2, and the Department Operations Manual, Section 54080.14, the Warden denied the appeal based on plaintiff's request to obtain a Kosher diet, concurring with the "First-Level Review in that appellant does not practice Jewish Kosher Law, nor is the appellant Jewish-born, therefore, he does not meet the guidelines for approval." (Dkt. No. 8 at 4.)[4] Plaintiff was advised that he could submit his grievance for a Director's Level of Review. (Id.)

11. The Director's Level Review of plaintiff's administrative grievance (Log No. 09-01803) was pending when plaintiff filed his initial complaint in this court on November 24, 2009.[5] (See Dkt. No. 1 at 2; Dkt. No. 30 at 32 (Transcript of Plaintiff's Nov. 2, 2010 Deposition, at p. 40).) Attached to his opposition to defendants' motion for summary judgment, plaintiff has

---

[4] The pages reflecting the Second Level Review were filed out of order. (See Dkt. No. 8 at 4-9.)

[5] The court permitted this action to proceed based on the following statements in the original complaint (Dkt. No. 1 at 2 (original emphasis)):

> 2 APPEALS (LOG #SOL-09-009320 and #SOL-09-00780) have been fully exhausted; Appeal Log #CSP-S-09-01803 is pending at the third level as of 11/ [illegible] . . .

Despite this reference to two other administrative grievances, neither have been submitted to the court.

7

1  filed a copy of the February 23, 2010 Director's Level Decision. (Dkt. No. 31 at 44-45.)[6] The
2  final decision is consistent with the Second Level decision. Relying on California Code of
3  Regulations, Title 15, Section 3054.2, the Director's decision denied plaintiff's request for a
4  Halal diet because "CDCR has not approved the Halal regulations and until they are
5  implemented a Halal diet is not available," and denied plaintiff's request for a Kosher diet
6  because he "is not Jewish and does not meet the criteria to participate in the JKDP [Jewish
7  Kosher Diet Program]." (Id. at 44.)

   12. The Halal Meat Alternate Program was implemented at CSP-Solano in approximately September 2010, and plaintiff is now a participant in the program.

   13. The Religious Meat Alternate Program ("RMAP"), as enacted February 2010, see Cal. Code Reg., tit. 15, § 3054.3 (annotation), "is only offered at the dinner meal. Inmate participants in the RMAP shall receive the vegetarian option at breakfast and lunch." CDCR DOM § 54080.14. Consistently, plaintiff asserts in his affidavit that "the only time 'Halal' meat is served is during the evening meal, not at breakfast, nor at lunch." (Dkt. No. 31 at 8.)

   14. Plaintiff asserts in his affidavit in opposition to the motion for summary judgment that "my Religion specifies meat is an integral part of a Muslim['s] diet, and forbids any diet that is detrimental to one['s] health." (Dkt. No. 31 at 4.) Plaintiff also alleges that the Religious Vegetarian Diet is protein-deficient and excessively high in carbohydrates, and caused plaintiff to become insulin-resistant and/or diabetic. (Id.)

   15. Plaintiff sues each of the defendants based on their respective roles in denying plaintiff's diet requests.

V. Disputed Facts and Evidence

   No party has submitted a statement of undisputed facts. However, in support of

---

[6] Defendants have not sought to dismiss this action for failure to exhaust administrative grievances. The failure to exhaust administrative remedies is an affirmative defense which the defendants have the burden of raising and proving; the requirement of exhaustion is not, however, jurisdictional. Wyatt v. Terhune, 315 F. 3d at 1108, 1119 n.13 (9th Cir. 2003).

1  his affidavit filed in opposition to the motion for summary judgment, plaintiff submitted
2  additional evidence, to which defendants have objected. "It is well settled that only admissible
3  evidence may be considered by the trial court in ruling on a motion for summary judgment."
4  Beyene v. Coleman Security Services, Inc., 854 F.2d 1179, 1181 (9th Cir. 1988) (citations
5  omitted). Defendants object to most of plaintiff's new evidence,[7] asserting improper foundation,
6  failure to demonstrate authenticity or compliance with the original document rule, and hearsay,
7  citing Federal Rules of Evidence 402, 802, 901 and 1001. (Dkt. No. 32 at 2-3.) However, in
8  light of the court's construction of the complaint, and given the limitations of defendants' own
9  evidence (relying entirely on plaintiff's deposition testimony), and their arguments herein (see
10 discussion, infra), the court has found it unnecessary to rely on any of the challenged evidence in
11 order to address the merits of the instant motion. The court does not, therefore, address
12 defendants' objections thereto.
13 VI. Discussion

     A. The Allegations of the Amended Complaint

15 As set forth in plaintiff's initial diet request, subsequent administrative grievance,
16 and the operative complaint, plaintiff sought to be provided Halal meat or, alternatively, a Kosher
17 diet until such time that Halal meat became available at CSP-Solano. (Dkt. No. 8 at 14-15
18 (completed Religious Diet Request forms); id. at 4, 5, 10 (administrative grievance); id. at 3
19 (Amended Complaint). Because these requests have been consistently presented in the
20 alternative, because plaintiff at no time sought only to receive Halal meat, and because plaintiff is
21 now receiving the Halal diet, the court construes plaintiff's complaint as limited to his allegation

---

[7] Defendants do not object to plaintiff's Exhibit G, which contains: (i) a duplicate copy of page 4 of the Second Level Review of plaintiff's pertinent administrative grievance (Log No. 09-01803) (Dkt. No. 31 at 39); (ii) copies of plaintiff's state tort claim against defendants, and the January 28, 2010 rejection of that claim (id. at 40-43); and (iii) a copy of the Director's Level Decision denying plaintiff's pertinent administrative grievance (Log No. 09-01803) (id. at 44-45.) Nor do defendants object to plaintiff's Exhibit H, which contains copies of selected portions of CDCR's Department Operations Manual (Dkt. No. 31 at 47-48), as well as copies of packaging labels from two types of Kosher foods (id. at 49).

that he was improperly denied a Kosher diet pending implementation of the Halal diet program.[8] Although petitioner also contends that his consumption of the Religious Vegetarian Diet impaired his health due to its allegedly high starch content, and this alleged problem provided an additional reason for plaintiff's diet requests, neither the quality of the Religious Vegetarian Diet, nor its actual impact on plaintiff's health, are properly before the court.[9]

Pursuant to the operative amended complaint, plaintiff sought injunctive relief ordering the "immediate" provision of Kosher meals "until [the] prison is able to provide Halal meats. . . ." (Dkt. No. 8 at 3.) Now that plaintiff is receiving Halal meats through the Religious Meat Alternate Program (commencing September 2010), his request for injunctive relief is moot.[10]

The court's analysis of plaintiff's claims under the First and Fourteenth Amendments, and RLUIPA, is therefore limited to plaintiff's requests for declaratory relief and damages ("$5,000 Punitive & $5,000 Compensatory Damages"). (Dkt. No. 8 at 3.) Plaintiff's request for damages is, however, limited to his constitutional claims. After the conclusion of briefing in this case, the Supreme Court ruled that sovereign immunity bars claims for money damages in a RLUIPA private cause of action against state officials in their official capacities.[11]

---

[8] While plaintiff, in his deposition and briefing, also seeks to challenge the *quality* of the implemented Religious Meat Alternate Program (see e.g. Dkt. No. 31 at 4, 8-9), this issue is not properly before the court; there is no indication that plaintiff's current challenges to the implemented Halal diet have been administratively exhausted for purposes of this action.

[9] However, these matters may be relevant to plaintiff's damages claim, if any.

[10] "Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness). Mootness is a jurisdictional issue, and federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists. If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." Foster v. Carson, 347 F.3d 742, 745 (9th Cir. 2003) (citations and internal quotation marks omitted).

[11] Plaintiff does not assert that he sues defendants in their personal capacities, and plaintiff's claims are reasonably construed to name defendants only in their official capacities.

Sossamon v. Texas, 131 S. Ct. 1651 (Apr. 20, 2011).

Finally, the court addresses defendants' threshold contention that each defendant is entitled to summary judgment as to his or her alleged role in denying plaintiff's diet requests, because "the only link between defendants and the alleged deprivation of plaintiff's rights is their role in the processing, investigating and/or adjudicat[ing]" of plaintiff's requests and grievance (Dkt. No. 30 at 8), and "there is no liability for alleged mishandling of inmate grievances . . . ." (id.). Defendants cite, inter alia, Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("inmates lack a separate constitutional entitlement to a specific prison grievance procedure"), and Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) ("[a prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates").

This argument is without merit. Plaintiff is not challenging the manner in which defendants processed his request and grievance, but the substance of the decisions, which were expressly based on CDCR policies. These decisions—including the failure of defendant Sudran to act, given her unique gate-keeping role in approving Kosher diet requests—are the matters plaintiff challenges pursuant to his constitutional and RLUIPA claims. Plaintiff followed the appropriate procedures by first seeking administrative approval of his diet request, then pursuing an administrative grievance. Because both chaplains and the warden were involved (even if by inaction) in the substantive responses to plaintiff's requests, each defendant is properly named.

      B.  First Amendment

Defendants next contend that the undisputed facts fail to demonstrate a constitutional violation of petitioner's rights under the First Amendment's Free Exercise Clause. These rights are implicated when prison officials burden an inmate's practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (the "sincerity test," not the "objective centrality test," triggers application of the Free Exercise Clause). Defendants incorrectly assert that the "centrality test" applies. (Dkt. No. 30 at 9.)

11

1    Plaintiff has clearly and consistently stated his apparently sincere belief that eating
2    Halal meat is not only consistent with, but required of, his Islamic faith, and that Kosher meat is
3    an acceptable alternative if Halal meat is unavailable.  <u>See</u> Amended Complaint (Dkt. No. 8 at 3)
4    ("[A]s an orthodox Muslim, of the SHAFI school of thought . . . [plaintiff] <u>must</u> consume
5    ritually-slaughtered meat to feel complete in his spirituality, as clear commandments guide him
6    in this subject . . . ."); <u>see also</u> plaintiff's August 17, 2009 "Religious Diet Request" (Dkt. No. 8
7    at 14) ("I am mandated to strive to obtain HALAL meats, when available, however I am allowed
8    to consume KOSHER meats and parve consumables if no HALAL food is available. . . . Unlike
9    the unorthodox "muslims," I am expressly forbidden from practicing veg[e]tarianism or to appear
10   to follow such practices; Orthodox Muslims eat meat and the Islamic Jurisprudence supports that
11   edict.  I may consume KOSHER foods but never restrict myself from eating meats as long as
12   those meats are lawful.  I am personally required to consume Kosher or Halal meats to maintain
13   my health & spirituality . . . ."); <u>and see</u> plaintiff's Opposition to the Motion for Summary
14   Judgment (Dkt. No. 31 at 4) ("my Religion specifies meat is an integral part of a Muslim['s] diet.
15   . .").  These consistent statements support a finding that plaintiff has sincerely believed, at all
16   relevant times, that his faith requires him to eat ritually-slaughtered meat.

17   Moreover, it is undisputed that plaintiff's exercise of this sincere religious belief
18   was burdened by the refusal of prison officials to grant plaintiff's request for a Kosher diet
19   pending implementation of the Halal diet.  The defendants justified the refusal to provide
20   plaintiff with a Kosher diet by reliance on California Code of Regulations, Title 15, Section
21   3054.2,[12] and the Department Operations Manual, Section 54080.14,[13] which expressly limit

---

23   [12] California Code of Regulations, Title 15, Section 3054.2, provides that "Jewish inmates may participate in the [Jewish Kosher Diet] program, as determined by a Jewish
24   Chaplain."  Cal. Code Regs., tit. 15, § 3054.2.

25   [13] Significantly, CDCR's Operations Manual, Section 54080.14, limits the Jewish Kosher Diet Program ("JDKP") to "Jewish inmates desiring to practice Jewish kosher law;"  "[o]nly
26   Jewish inmates, as determined by a Jewish Chaplain, may participate in the JKDP."  DOM, §

participation in the Kosher diet program to Jewish inmates. (See Dkt. No. 8 at 10 (initial denial of administrative grievance); id. at 4 (second level decision); Dkt. No. 31 at 44 (third level decision).) These provisions remain in effect.

A prison regulation that impinges on an inmate's right to freely exercise his religion is valid if it is reasonably related to legitimate penological interests. Shakur v. Schriro, supra, 514 F.3d at 884, citing Turner v. Safley, 482 U.S. 78, 89 (1987) (setting forth factors to be considered in evaluating the constitutionality of a prison regulation), and Ward v. Walsh, 1 F.3d 873, 876-77 (9th Cir. 1993) (holding that Turner continues to apply to prisoner free exercise claims). The following four factors are to be balanced in determining whether a prison regulation is reasonably related to legitimate penological interests:

> (1) Whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> (2) Whether there are alternative means of exercising the right that remain open to prison inmates;
>
> (3) Whether accommodation of the asserted constitutional right will impact ... guards and other inmates, and on the allocation of prison resources generally; and
>
> (4) Whether there is an absence of ready alternatives versus the existence of obvious, easy alternatives.

Turner, 482 U.S. at 89-90 (citation and internal quotation marks omitted).

Defendants contend that "California State Prison-Solano ha[d] a legitimate penological interest in streamlining food service and not providing a Kosher diet until such time that the Halal Meat Alternative [was] implemented." (Dkt. No. 30 at 9, 10.) Defendants argue that "the institution was not ignoring the religious needs of its Muslim inmates as it offered to them the Religious Vegetarian diet option that provided Muslim inmates with a diet consistent

---

54080.14. However, in contrast, the newly implemented Religious Meat Alternative (Halal) Program includes authorizing participation by "[n]on-Muslim inmates with a religious dietary need," to be decided by the Religious Review Committee. Id.; see also Cal. Code Regs., tit. 15, § 3054.3.)

with the tenants of their religion; hence, plaintiff had an alternative means of ensuring that he consumed a diet commensurate with the tenants of his religion." (Id. at 10.)  In addition, defendants contend that "in the two years preceding the introduction of the Halal Meat Alternative program, Plaintiff admittedly, rarely utilized the Religious Vegetarian diet option available to him which was comprised of Halal foods.  Rather he simply choose (sic) to accept the regular diet provided by CDCR and make his own determination as to what items appeared acceptable thus putting himself at risk for consumption of religiously unacceptable foods."[14]  (Id.) Finally, defendants generally argue that the third and fourth Turner factors are supported by CSP-Solano's efforts to maintain the "status quo," "streamlined" food service pending implementation of the Halal alternative.  (Id. at 10.)

        Defendants' Turner analysis falls short.  With respect to the first Turner factor, defendants assert only that CSP-S's penological interest in refusing plaintiff a Kosher diet was to maintain a "streamlined food service" pending implementation of the Halal diet program.  In Shakur, the Ninth Circuit Court of Appeals found that the more specific arguments of defendant Arizona Department of Corrections ("ADC") weighed only slightly in the Department's favor, based on the findings that to provide plaintiff Shakur with a Kosher diet would add only a "small or even negligible" "marginal cost and administrative burden," interests that were nonetheless rationally related to ADC's "legitimate administrative and budgetary concerns . . . [in] simplify[ing] its food service and reduc[ing] expenditures." Shakur, 514 F.3d at 886.  Based on the same reasoning, despite the limited argument of defendants herein, the court finds that the first Turner factor weighs slightly in defendants' favor.

        The second Turner factor evaluates whether there are alternative means for a prisoner to exercise the right at issue.  In Shakur, the plaintiff, a Muslim, contended that the prison's ovo-lacto vegetarian diet caused him gastrointestinal discomfort inconsistent with the

---

[14] Defendants' further references to plaintiff's alleged practices "prior to his conversion to a more orthodox view of Islam" (Dkt. No. 30 at 10), are irrelevant.

"'purity and cleanliness' needed for Muslim prayer.'" 514 F.3d at 882. Shakur requested a standard Kosher diet, because Kosher meat met Halal requirements, and because plaintiff believed that this alternative protein source would not cause him gastrointestinal discomfort. Id. Shakur's request was denied because "a Kosher diet [was] not a requirement of his religion." Id. In evaluating these matters, the Ninth Circuit found that, diet aside, plaintiff had "alternative means by which he can practice his religion," rather than being "denied all means of religious expression." Shakur, 514 F.3d at 886 (citation and internal quotation marks omitted). The court found, for example, that Shakur "could keep a copy of the Qur'an in his cell, along with a prayer rug and up to seven religious items . . . . [h]e could receive visits from an imam upon request, and he could participate in the religious observance of Ramadan. . . . [that is,] he retained the ability to participate in other significant rituals and ceremonies of [his] faith." Id. (citations and internal quotation marks omitted). Based on these findings, the court found that the second Turner factor weighed in defendants' favor. Id.

Here, defendants assert only that the availability of the Vegetarian Religious Diet provided plaintiff an alternative means for exercising his religious beliefs. While defendants ignore plaintiff's clear statements that the vegetarian option was inconsistent with his religious beliefs (and his health needs), plaintiff does not contend that he has been foreclosed from other, nondietary, means of expressing his religious beliefs. Based on the absence of such allegations, and for the reasons identified in Shakur, supra, the court finds that the second Turner factor appears to weigh in favor of defendants herein.

The Ninth Circuit remanded the Shakur action for additional findings pursuant to Turner's third and fourth factors. With respect to the third factor (impact on guards, inmates and prison resources if requested accommodation is granted), defendant ADC argued that accommodating Shakur's diet request "could look like favoritism to other inmates and could lead to a hostile prison environment," and that "providing an inmate with such a diet could also lead inmates to request diets that their religions did not require, increasing ADC's costs for meals by

exorbitant amounts." Shakur, 514 F.3d at 886 (internal quotation marks omitted). The Ninth Circuit discounted the favoritism argument, while noting the lack of findings regarding the financial impact of accommodation, including the lack of evidence "that ADC actually looked into providing kosher meat to all Muslim prisoners, which could potentially result in economies of scale that would reduce the overall cost of the meals," id. at 887, the Ninth Circuit also observed that "there is no indication that other Muslim prisoners would demand kosher meals if Shakur's request were granted." Id.

With respect to the fourth factor (availability of policy alternatives), the Ninth Circuit concluded that it "cannot determine whether the alternative kosher diet requested by Shakur places more than a de minimis burden on ADC." Shakur, 514 F.3d at 888. Again noting that the district court had not made sufficient findings of fact concerning the cost and availability of providing plaintiff with Halal or Kosher meat, id. at 887, the Ninth Circuit observed:

> [T]he fact that ADC already provides Jewish inmates with kosher meals that cost $5 per day more than the standard meal, and orthodox kosher meals that cost three to five times more, "casts substantial doubt on [its] assertion that accommodating [Shakur's] request would result in significant problems for the prison community." DeHart [v. Horn], 227 F.3d [47] at 58 [3rd Cir. 2000); see also Ashelman v. Wawrzaszek, 111 F.3d 674, 678 (9th Cir. 1997) ("The evidence also shows that the prison accommodates the dietary requirements of other religious groups . . . without disruption. Under these circumstances, it does not appear that the difficulties envisioned by the prison are insurmountable.").

Shakur, 514 F.3d at 887. The court also reiterated the Supreme Court's observation that the "existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." Id., quoting Turner, 482 U.S. at 90 (internal quotation marks omitted).

Here defendants assert, in support of the third and fourth Turner factors, only that there is an advantage to maintaining the "status quo," "streamlined" food service. In the absence of any evidence to support this assertion, the court declines to speculate. Therefore, the court finds that, while the first and second Turner factors weigh in defendants' favor, the court cannot

16

make a determination on the present record relative to the third and fourth Turner factors. Because these factors provide the essential framework for assessing the merits of plaintiff's First Amendment claim, defendants' motion for summary judgment on this claim should be denied.

### C.  Religious Land Use and Institutionalized Persons Act

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides more stringent protections than those accorded by the First Amendment. RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005). RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government can establish that the burden furthers "a compelling governmental interest" by "the least restrictive means." 42 U.S.C. § 2000cc-1(a) (1)-(2). Thus, RLUIPA replaces the "legitimate penological interest" standard articulated in Turner, with the "compelling governmental interest" and "least restrictive means" tests codified at 42 U.S.C. § 2000cc-1(a). Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005). In addition, RLUIPA broadly defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A).

The only claim defendants make in support of their motion for summary judgment on plaintiff's RLUIPA claim is that plaintiff's claim for *injunctive relief* is moot. (Dkt. No. 30 at 11.) This court has acknowledged that plaintiff's claim for injunctive relief is now moot, and that plaintiff may not seek damages on his RLUIPA claim. However, plaintiff's request for *declaratory relief* is not moot and, on this basis, plaintiff's RLUIPA claim should proceed. Accord, Flett v. Vail, 2010 WL 1712720, *3 (E.D. Wash. 2010) (prisoner permitted to proceed on his RLUIPA claim for declaratory relief only); Dayringer v. Webster, 2009 WL 1424189, *1 (W.D. Mo. 2009) (plaintiffs permitted to proceed on their claims under the First Amendment and

RLUIPA, although they sought only declaratory judgment); Low v. Stanton, 2008 WL 544393, *11-12 (E.D. Cal. 2008) (permitting plaintiff to proceed on his First Amendment and RLUIPA claims for declaratory relief).

Based on the court's finding that plaintiff's First Amendment claim survives defendants' motion for summary judgment, the legal reality that RLUIPA imposes even greater constraints on defendants than the First Amendment, and the fact that defendants have failed to address the merits of plaintiff's RLUIPA claim, this court recommends that defendants' motion for summary judgment on plaintiff's RLUIPA claim be denied. Accord, Shakur, 514 F.3d at 891 (remanding plaintiff's RLUIPA claim to the district court for factual development "as to the extent of the burden on Shakur's religious activities, the extent of the burden that would be created by accommodating Shakur's request, and the existence of less restrictive alternatives").

### D.  Equal Protection

Defendants do not address plaintiff's equal protection claim, which is premised on plaintiff's contention that defendants "intentionally den[ied] Plaintiff Halal meats or the alternative of Kosher meats in the interim" (Dkt. No. 8 at 3 (original emphasis)), and his argument that defendants "discriminated against him" (Dkt. No. 31 at 7).

"The Equal Protection Clause requires the State to treat all similarly situated people equally. Moreover, the Equal Protection Clause entitles each prisoner to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" Shakur, 514 F.3d at 891 (citation omitted), quoting Cruz v. Beto, 405 U.S. 319, 322 (1972). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (citation and internal quotations marks omitted).

In similar circumstances, the Ninth Circuit instructed that the appropriate equal

protection comparison is between defendants' treatment of plaintiff as a Muslim, and defendants' treatment of Jewish prisoners. Shakur, 514 F.3d at 891. "Under the Turner test, Shakur can not succeed if the difference between the defendants' treatment of him and their treatment of Jewish inmates is reasonably related to legitimate penological interests." Id. (citations and internal quotation marks omitted). The Ninth Circuit found that it would be inappropriate to decide Shakur's equal protection claim on the existing record, demonstrated by the insufficiency of the evidence to complete a Turner analysis. Shakur, 514 F.3d at 891-92.

The instant case presents even greater record inadequacies than in Shakur, and defendants have not addressed the merits of plaintiff's equal protection claim. This court therefore recommends that defendants' motion for summary judgment on plaintiff's equal protection claim be denied.

VII. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (Dkt. No. 30) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 21 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within 14 days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 13, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

mayw3284.msj